(59 Misc. Rep. 642.)

TAVSHANJIAN et al. v. ABBOTT et al.

(Supreme Court, Special Term, New York County. June, 1908.)

1. DESCENT AND DISTRIBUTION — RIGHTS OF PRETERMITTED CHILDREN—"MENTIONED."

Testator, on the birth of his first child, made a codicil to his will leaving a legacy to the child, who predeceased him. It provided that, on his death and that of his wife and child or children at the same time, the executor should give to every legatee double the amounts they would have

otherwise received. *Held*, that the two children born after the execution of the codicil, and who survived testator, were not mentioned in the will, within Law of Wills (2 Rev. St. [1st Ed.] p. 65, pt. 2, c. 6, tit. 1, § 49, as amended by Laws 1869, p. 40, c. 22) § 17, and were entitled to the same portion of the testator's estate as would have descended to them had testator died intestate, and devises and legacies in the will were to be reduced proportionately.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 16, Descent and Distribution, § 128.

For other definitions, see Words and Phrases, vol. 5, p. 4476.]

2. CHARITIES—CHARITABLE USES.

A bequest of money in trust to be loaned, in sums to deserving Armenians by a society to be incorporated, the loan to be repaid, with interest, and to be made on business principles, without provision for the issuance of stock, is invalid, as not authorized by law, and is not a charitable use, and not saved under Laws 1893, p. 1748, c. 701, enacted to save charitable trusts otherwise void for indefiniteness.

Action by Arax H. Tavshanjian and others against Harrison B. Abbott and others to construe a will. Judgment rendered.

K. S. Kebabian, for plaintiffs.
C. W. Sinnott, for defendants.

BLANCHARD, J. This is an action brought by the executors of the will of Hovhannes S. Tavshanjian for the construction of the will.

The first question raised is whether the two after-born children of the testator are provided for or in any way mentioned in the will or codicil of the testator, within the meaning of section 17 of the law of wills (2 Rev. St. [1st Ed.] p. 65, pt. 2, c. 6, tit. 1, § 49, as amended by Laws 1869, p. 40, c. 22). This section provides as follows:

"Whenever a testator shall have a child born after the making of a last will, either in the lifetime or after the death of such testator, and shall die leaving such child, so after-born, unprovided for by any settlement, and neither provided for nor in any way mentioned in such will, every such child shall succeed to the same portion of such parent's real and personal estate as would have descended or been distributed to such child if such parent had died intestate, and shall be entitled to recover the same portion from the devisees and legatees, in proportion to and out of the parts devised and bequeathed to them by such will."

The will at the time of its execution contained no mention of the testator's children. The codicil of the will, however, which was executed after the birth of the testator's first-born child, and before the birth of the two after-born children above mentioned, contains a liberal bequest to the first-born child, and also contains this provision:

"In the event of the death of myself, wife and child or children at one and the same time, through some accident or otherwise, I direct my executors to give to each and every one of my legatees double the amounts each and every one would have received under natural circumstances."

The statute above quoted has several times been construed by the courts. In Wormser v. Croce, 120 App. Div. 287, 104 N. Y. Supp. 1090, the testator stated in his will that:

"Being desirous of making a just distribution of my property among the members of my family, * * * having full confidence in the discretion and

justice of my beloved wife, Mary, I give, devise and bequeath all my estate, real and personal, of every description whatsoever, to my said wife, Mary."

At the time the will was executed the testator had one child living. Thereafter two children were born, who survived the testator. In holding that the after-born children were "mentioned" in the will, within the meaning of the statute above quoted, the court said; Mr. Justice Scott writing:

"It was, as we consider, the principle of the civil law that was intended to be ingrafted upon our law by the statute above quoted; the object being not to secure equality of distribution, but to guard against inadvertent or unintentional disinheritance, or, as the revisers expressed it in their notes, a 'probable oversight.' Therefore it was provided, in order to sustain a will against the claims of after-born children, that provision must have been made for them, or that they must have been in some way mentioned in the will; either provision or mention being sufficient. If, therefore, it can be seen or reasonably presumed from the terms of the will itself that the testator had in mind the probability that children might be born after the will was made, and provided with that contingency in mind, the statute will be satisfied and the will sustained. We think it apparent that Prosper L. Gilbert made his will with a view to the possibility that there might be after-born children, and that in a legal sense he must be considered as having mentioned them in his will."

In the case above quoted, the testator executed his will while he had one child living, and expressly stated that he was desirous of making a just distribution of his property among the members of his family, and that he had full confidence in the discretion and justice of his wife, and accordingly devised and bequeathed all his property to her. In the present case the testator at the time he executed his will had no children living, and when his first child was born he executed the codicil above quoted, in which he left a specific legacy to this child. This child died before the death of the testator. Nothing in the present will and codicil, other than the paragraph above quoted, indicates that the possibility of after-born children was in the mind of the testator at the time he was making the disposition of his property, except for his bare reference to children. In providing for the disposition of his property in the event of the death of himself and his entire family, both the will and the codicil showed an "inadvertent or unintentional disinheritance" and a "probable oversight," within the meaning of the language of the opinion above quoted. The bare reference to the possible extinction of his entire family cannot by any stretch of the imagination be construed to indicate that the testator, in disposing of his property, had in mind the probability that children might afterward be born, among whom a distribution of his property might be possible.

In Minot v. Minot, 17 App. Div. 521, 45 N. Y. Supp. 554, the testator provided in his will that the reversion of the residue of his estate should go to those persons who, if his death had occurred at the time of the death of his wife, "would then be my heirs at law by blood." The testator left a son born after the execution of the will. In holding that the son was provided for and mentioned in the will, within the meaning of the statute above quoted, the court said that:

"It is sufficient if it can be inferred from the terms of the will that the testator had in mind the possibility of the birth of such child, and made a provision in the will to which the child when born would be entitled."

In Matter of Morgenstern, 9 Misc. Rep. 198, 30 N. Y. Supp. 215, the testator, after expressing his full confidence in the judgment and capacity of his wife in the management of the property, and of her love for their children, and that she would do the same full justice to them in the disposition of the estate as he would do, devised and bequeathed to her the residue of his estate. At the time of the execution of the will the testator had three children living. Thereafter three more children were born to the testator.. Upon a request to construe the will, the surrogate refused to construe the will on the ground that it was beyond his jurisdiction to do so, and in dictum said that a sufficient mention of the after-born children was made in the will.

In Stachelberg v. Stachelberg, 52 Misc. Rep. 22, 101 N. Y. Supp. 178, the testator left the residue of his estate to his wife, and provided that in case of her death before him, leaving lawful issue her surviving, such residue should belong to such issue in equal proportions. In holding this to be a sufficient provision for and mention of a child born after the testator's death, the court said:

"The words of the statute, 'any way mentioned,' indicate strongly that the expression was used in the broadest possible sense, and was meant to cover any form of reference that showed that the testator in making his will had in mind the possibility of after-born children. * * * The purpose of the statute was not to restrict the power of the testator, or to defeat his intention in case he made.it clear that he wished to leave nothing to his after-born child. The purpose was to guard against an unintentional omission."

Upon appeal, Mr. Justice Scott writing, judgment was reversed, on the ground that the children mentioned in the will "cannot be held to include a child born after the father's death." Stachelberg v. Stachelberg, 124 App. Div. 232, 108 N. Y. Supp. 645.

The present will and codicil, unlike those in all the cases hereinbefore discussed, contain no suggestion that the testator intended to leave nothing to his after-born children, or intended to postpone their enjoyment of his estate until a remote date. Except for the chance reference to "children" in a clause of the codicil providing for a disposition of the testator's property in the event that he and his entire family should become extinct at the same time, no possible mention of afterborn children could be gathered from the will or from the codicil. Under the rule established by the decisions above quoted, construing the statute above mentioned, it is clear that there was an "inadvertent or unintentional disinheritance," and a "probable oversight," and an "unintentional omission" of the after-born children, and the contingency of after-born children among whom a disposition of his property might be made by the testator was not present in the testator's mind at the time he executed the will and the codicil, and accordingly the afterborn children were not "mentioned," within the meaning of the statute.

It follows that the two after-born children succeed to the same portion of the testator's real and personal estate as would have descended or been distributed to them had the testator died intestate, and are entitled to recover the same portion from the devisees and legatees mentioned in the will in proportion to and out of the parts devised and bequeathed to them by the will.

The second question relates to the validity of one of the bequests. Paragraph 16 of the will provided as follows:

"Sixteenth. I give, devise and bequeath to my executors hereinafter named the sum of five thousand dollars, in trust, nevertheless, for the following purposes: I direct my said executors promptly to cause the incorporation of a society under the laws of the state of New York, to be known as the Tavshanjian Relief Fund; said society shall be managed by five trustees, to consist of four Armenians and one American, all to be named by my said executors. Immediately after the incorporation of said society, my said executors shall pay over to the trustees thereof said sum of five thousand dollars. This fund is to be under the complete control of such trustees, and is to be loaned in sums of five hundred dollars or less at a time, to any honest and deserving Armenian, to help him in his business, the loan to be repaid, with interest, and to be made only on business principles, and upon such security as said trustees shall deem advisable. To those wishing to peddle goods, sums of not over fifty dollars shall be loaned, if they be persons of good repute and clean record, and such loans shall likewise be made on a business basis and on such security as said trustees shall deem advisable. In case no security can be given, and the applicant is well known for his uprightness and integrity, and his business, after investigation by the trustees, is deemed by them to be in such a condition that with the help of a loan of money it would be made a success, said trustees shall be authorized to make a loan without security. In case of the death or resignation of any of said trustees, the remaining members shall elect his successor."

This provision contemplates a profitable business enterprise to be incorporated without provision for the issue of stock, and consequently a kind of corporation not capable of being created under the existing laws of the state of New York. Such a corporation might conceivably be created by special act; but, since the trust must meanwhile be necessarily uncertain, the ownership and power of alienation over the fund would be suspended otherwise than by the statutory lives, and consequently this bequest is in violation of the statute. Burrill v. Boardman, 43 N. Y. 254, 3 Am. Rep. 694; Cruikshank v. Home for the Friendless, 113 N. Y. 337, 21 N. E. 64, 4 L. R. A. 140; People v. Simonson, 126 N. Y. 299, 27 N. E. 380.

Chapter 701, p. 1748, of the Laws of 1893, enacted for the purpose of saving charitable trusts which would otherwise be void for indefiniteness, cannot here apply, because the trust contemplated in the paragraph above quoted, although productive of a certain degree of benevolence, is nevertheless a business enterprise, and not a charitable use. Allen v. Stevens, 161 N. Y. 122, 55 N. E. 568; Matter of Griffin, 167 N. Y. 71, 60 N. E. 284.

The bequest contained in paragraph 16, above quoted, must therefore be held to be invalid.

Judgment accordingly.